Linda **ELDREDGE** and Christine A. Mazur, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

**CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES JOINT APPRENTICESHIP AND TRAINING COMMITTEE, Defendant.**

No. C–75–2062–CBR.

United States District Court, N. D. California.

July 9, 1979.

Alberta M. Blumin, Dayley & Blumin, Oakland, Cal., for plaintiffs.

Wesley Sizoo, Moore, Sizoo & Cantwell, Oakland, Cal., for defendant.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

On September 30, 1975, plaintiffs Linda Eldredge and Christine Mazur filed this sex discrimination suit against defendant Carpenters 46 Northern California Counties Joint Apprenticeship and Training Committee ("JATC"), alleging that defendant had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(d). Defendant JATC is a joint labor-management committee that serves as a board of trustees responsible for the administration of the Carpenters Apprenticeship and Training Trust Fund for Northern California. The trust fund was created by a 1963 agreement among representatives of various local unions of the United Brotherhood of Carpenters and Joiners of America (AFL–CIO) and various associations of contractors who employ carpenters in Northern California.

Pursuant to its authority under the trust fund agreement, defendant JATC has es-

tablished a four-year apprenticeship program leading to journeyman status upon the completion of a specified number of hours of classroom training and on-the-job experience. In order to gain admission into a JATC training program, one must obtain placement on a new applicant referral list maintained by a district office of the JATC and one must be referred to a job as a beginning apprentice.

There are two methods of obtaining such a job referral. One approach is to await referral in numerical order off the new applicant referral lists. If an employer calls a union dispatcher and seeks a beginning apprentice without requesting a particular individual, the next apprentice on the JATC's referral list will be referred. In their original complaint, plaintiffs alleged that the JATC had violated Title VII through engaging in discriminatory practices in the placement of women on the new applicant referral lists. Plaintiffs claimed that they had been treated less favorably than male applicants when seeking placement on such lists.

Applicants rarely obtain jobs through numerical referral, however, for employers very seldom call in for a beginning apprentice without requesting a particular individual. The vast majority of those admitted to the JATC training program obtain a job referral through the "hunting license" method, which enables an individual to seek employment on his own. After finding a contractor willing to employ him as an apprentice for at least 60 days, an individual may obtain a letter of subscription signed by that employer, place his name on the new applicant referral list, and then be dispatched to work for that employer.[1]

After discovery in this suit revealed the unlikelihood of receiving a numerical referral off the new applicant referral lists, both plaintiffs unsuccessfully attempted to find employment through the "hunting license" method. They then amended their com-

---

1. A more detailed explanation of the factual background of this case is provided in the Court's earlier opinion, *Eldredge v. Carpenters*

*46 Northern California, etc.,* 440 F.Supp. 506 (N.D.Cal.1977).

plaint to allege that defendant's maintenance of this alternative method of securing job referrals violates Title VII. The amended complaint alleges that employers' discrimination against women operates through the "hunting license" system to exclude women from apprenticeships.

Following plaintiffs' amendment of their complaint, the Court concluded that since the numerical referral method plays such a minor role in the job referral system, plaintiffs' efforts to obtain relief that would increase women's chances of gaining admission to defendant's apprenticeship program should be directed at the "hunting license" system rather than the numerical referral method. In fact, the remedy plaintiffs proposed did involve elimination of the "hunting license" system:

"Plaintiffs have not specified the precise system they seek to have instituted, but it is plain that they envision a system requiring an employer who wishes to hire a beginning apprentice to contact the union local and enter a request without naming any individual, whereupon the union would be required to dispatch an applicant selected by the JATC by means of one of a number of non-discriminatory techniques." *Eldredge v. Carpenters 46 Northern California, etc.*, 440 F.Supp. 506, 514 (N.D.Cal.1977) (footnote omitted).

Thus, the relief contemplated would substantially alter the present system of hiring beginning apprentices.

In order to grant effective relief and to enable the employers to protect their interest in selecting their own employees, this Court ordered that the affected employers be joined as indispensable parties under Rule 19.[2] 440 F.Supp. at 519-527. In so doing, the Court recognized the substantiality of the employers' interest in preserving the present hiring system:

"Even where there are no objective qualifications for a job, the interest of an employer in selecting those who, for any non-discriminatory reason, he believes to be more highly motivated or more compatible with his existing work force, is not an insubstantial one. * * * It is no doubt true that the ' "unstandardized and subjective" ' judgments presently being made ' "lend themselves to arbitrary and discriminatory hiring" ' [citations omitted], and plaintiffs have suggested that such results have occurred in this case. Nevertheless, the employers are entitled to their day in court to contest these allegations before the Court issues an order abolishing the prerogatives they presently enjoy." 440 F.Supp. at 522.

This Court concluded that the employer contributors to the trust fund and the local unions that refer applicants registered with JATC to employment were indispensable parties in whose absence the action could not in equity and good conscience proceed. On November 3, 1977, the Court ordered that if such parties were not joined within sixty days or within such further time as the Court might, on good cause shown, allow, the action would be dismissed, *Eldredge, supra*, 440 F.Supp. at 527.

*Plaintiffs' Motion to Join Additional Parties Defendant*

Plaintiffs have engaged in extensive discovery in order to determine which employers and unions should be joined and whether certification of defendant classes or joinder of employers' associations and the international union might serve as an alternative means of complying with the Court's order. In order to afford plaintiffs sufficient time to obtain and analyze the voluminous data relating to the affected employers and local unions, the Court granted an extension of the time limit originally set for effecting joinder.[3]

Plaintiffs have moved to amend their complaint to join the Northern California Homebuilders Conference ("NCHBC"), an

---

2. Although the Court was primarily concerned with the need to join the employers, the Court also concluded, for reasons set forth in the earlier opinion, that the local unions that refer applicants registered with JATC to employment should be considered indispensable parties. *Eldredge, supra*, 440 F.Supp. at 524.

3. The Court first granted an extension of the time limit to April 2, 1978, and later granted a further extension allowing plaintiffs through January 1, 1979, to join additional parties defendant.

employers' association, and the United Brotherhood of Carpenters and Joiners of America, the international union, as additional parties defendant. Defendant JATC seeks dismissal of the action, arguing that joinder of these parties does not comply with the Court's order of November 3, 1977. The most significant objection raised by defendant is that plaintiffs have failed to establish that the NCHBC could adequately protect the interests of all employers involved in the JATC apprenticeship program. Although plaintiffs emphasize that NCHBC negotiates the lead collective bargaining agreement governing carpentry in Northern California, this fact alone does not establish that NCHBC could represent the interests of the numerous employers who would be affected by a court order directing the JATC to institute a new job referral system. Since many of the affected employers are not even members of the NCHBC, but are represented by other contractors' associations or are independent contractors, joinder of NCHBC does not fully satisfy the Court's concerns regarding representation of the employers' interest in preserving the present hiring system. Plaintiffs consider NCHBC "the part most capable of representing employer interests." Yet even assuming that NCHBC is the single party most capable of representing the employer interests at stake here, which plaintiffs have not shown, the Court is not persuaded that joinder of this one contractors' association is a satisfactory substitute for joinder of the individual employers who would be affected by the proposed decree. Furthermore, the declaration submitted by Mr. Wesley Sizoo, an attorney for NCHBC, in support of JATC's opposition to plaintiffs' motion to amend, states that no employer or member organization of NCHBC has consented to have NCHBC appear on its behalf in this action. Plaintiffs have not contradicted the statement that NCHBC is not authorized to represent the employers interest here, nor have they provided the Court with a basis for concluding that NCHBC could effectively represent those interests.

The Court therefore finds that plaintiffs have not adequately complied with the Court's order of November 3, 1977, insofar as it directed joinder of the employer contributors to the Carpenters Apprenticeship and Training Trust Fund for Northern California.[4] Accordingly, the action must be dismissed under Rule 41(b) for failure to comply with the Court's order directing joinder of indispensable parties.

*Defendant's Motion for Attorneys' Fees and Costs*

Defendant JATC seeks an award of costs and an award of attorneys' fees for the period following the Court's November 3, 1977 opinion. In support of the motion for attorneys' fees, defendant relies primarily[5] on *Christianburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1977) in which the Supreme Court held:

> "[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."

Defendant asserts that plaintiffs proceeded in an unreasonable and frivolous manner by engaging in extensive discovery regarding the identity of those employers, employers'

---

4. Since the case must be dismissed for failure to join the affected employers, it is unnecessary to consider whether plaintiffs' proposed joinder of the international union would serve as an adequate substitute for joinder of the affected local unions.

5. In addition, defendant apparently contends that 28 U.S.C. § 1927, which permits the Court to require an attorney personally to satisfy excess costs incurred because of the attorney's unreasonable and vexatious litigation, could serve in a Title VII suit as a basis for imposing liability on the attorney for attorneys' fees incurred because of such unreasonable conduct. This argument is based on the provision in Title VII permitting the court to award the prevailing party "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 2000e–5(k). Since the plaintiffs' attorney in this case did not act so unreasonably that costs could be imposed under 28 U.S.C. § 1927, defendant's argument need not be considered, yet the Court notes that it would be very difficult to construe 28 U.S.C. § 1927 as authorizing an award of attorney's fees.

associations, and labor organizations that are involved with the JATC apprenticeship program and by then moving to amend the complaint to join NCHBC and the international union, rather than individual employers and the local unions. Defendant views plaintiffs' proposed joinder of these two parties as an unreasonable failure to make use of the information obtained through discovery and states that plaintiffs have acted in total disregard of the reasoning of the Court's November 3, 1977 opinion.

Although plaintiffs' proposed second amended complaint does not adequately comply with the Court's order regarding indispensable parties, plaintiffs have not proceeded in a manner that could be categorized as "frivolous," justifying an award of attorneys' fees. Rather, they have attempted to comply with the Court's order in the face of great difficulties arising from the fact that the affected employers are so numerous that it is impractical to join them all as individual defendants. Plaintiffs cannot be faulted for considering joining contractors' associations in lieu of employers, as this alternative was referred to in the Court's earlier opinion and not conclusively rejected. *Eldredge, supra,* 440 F.Supp. at 526–527.

■ Defendant's memorandum regarding the requested award of costs and attorneys' fees does not specifically address the issue of costs, yet it seems to assume that where a case is dismissed due to plaintiffs' failure to join indispensable parties, the defendant should be considered a "prevailing party" within the meaning of Rule 54(d).[6] Certainly defendant JATC is not a "prevailing party" in the sense of having successfully defended the suit on the merits, nor is this a case where plaintiffs voluntarily dismissed the suit.[7] Even assuming that defendant JATC should be considered a "prevailing party," Rule 54(d) does not compel an award of costs. The rule provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." In this case the most equitable resolution of this matter is to have each side bear its own costs. Plaintiffs have diligently, though unsuccessfully, attempted to comply with the Court's order requiring joinder of indispensable parties. The Rule 19 issues that arose in this case presented complex legal questions and particularly difficult practical problems because of the factual setting of this suit. This is not a case where defendant can be said to have "prevailed" in the usual sense. Rather, considerations of equity prevented the suit from continuing without the joinder of parties who as a practical matter could not be joined.[8] The Court of Appeals for the Ninth Circuit has stated that "the awarding of [costs under Rule 54 (d)] is discretionary with the trial judge." *K–2 Ski Company v. Head Ski Co.,* 506 F.2d 471, 476–477 (9 Cir.1974). The Court concludes that in this case discretion should be exercised to deny the award of costs sought by defendant JATC.

6. Federal Rule of Civil Procedure 54(d) provides, in relevant part:

"Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ."

7. In *Corcoran v. Columbia Broadcasting System, Inc.,* 121 F.2d 575 (9 Cir.1941), the Court of Appeals for the Ninth Circuit considered the meaning of the term "prevailing party" as used in a statutory provision governing an award of attorneys' fees. The court concluded that the defendant was a "prevailing party" although the case had not gone to trial on the merits. Since the plaintiff had voluntarily dismissed the suit, the defendant was the prevailing party "within the spirit and intent of the statute." 121 F.2d at 576.

8. While the Court is convinced the result reached here is required for the reasons set forth above, it is nonetheless troubled by the seemingly harsh result. Counsel for plaintiffs have devoted a substantial amount of time and effort in vigorously prosecuting this case. Because the Court is desirous that women be afforded equal opportunities in all areas of employment, including the construction industry, the Court asked counsel for JATC at a status conference in chambers whether JATC would take every step to insure that women would be given every opportunity to be employed as carpenters. In a proposed statement submitted to the Court and counsel for plaintiffs, defendant JATC "reaffirm[ed] [its] desire and intention to exert [its] best efforts to assist women in becoming more active and involved in the carpentry craft through greater participation in the carpenters apprenticeship program. The JATC

Accordingly, IT IS HEREBY ORDERED that plaintiffs' motion to join additional parties defendant is denied, and the case is dismissed without prejudice pursuant to Rule 41(b) on the ground that plaintiffs have failed to comply with the Court's order to join indispensable parties.

IT IS HEREBY FURTHER ORDERED that defendant's motion for an award of attorneys' fees and costs is denied, and the parties shall bear their own costs.

will communicate with participating carpenter local unions and with individual employers and employer associations to make them aware of the opportunities for employing female apprentices, and will encourage individual employers to hire qualified female apprentices. It is the intention that these efforts will result in an awareness of individual employers to the employment of women and a substantial increase in the number of females enrolled in the apprentice program." The Court expects that defendant JATC will adopt this statement and exercise its best efforts toward these laudable goals. Hopefully the ultimate relief sought by plaintiffs may be obtained by this informal method.